UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN PAUL GOLDASSIO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.17-cv-00198-HRL<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 24 |

## I.  INTRODUCTION

Plaintiff John Paul Goldassio ("Goldassio") appeals a final decision by Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"), to deny Goldassio's application for disability benefits under the Social Security Act. Each party now moves for summary judgment. Dkt. Nos. 18, 24. For the reasons described below, the Court denies Goldassio's motion and grants the Commissioner's cross-motion for summary judgment.

All parties consented to have this matter adjudicated by a magistrate judge. Dkt. Nos. 5, 10.

## II. BACKGROUND

### A.  Medical History

Born in 1983, Goldassio graduated from high school and went on to earn an associate's degree in computer science. AR 34. In September 2011, he was only a few months into a new job as a computer support specialist with the Ghirardelli chocolate company when, while bending down to open a box of hard drives, he heard a "pop" in his lower back. AR 325, 335. Ghiradelli laid Goldassio off soon after the injury, and Goldassio has not worked ever since. AR 325.

Goldassio complained of lower back pain registering between eight or nine on a scale of ten, AR 335, but a November 2011 MRI came back "normal," AR 337. Goldassio was initially prescribed hydrocodone with acetaminophen, a cold/hot pack, and physical therapy three times a week. AR 336. He was later given a TENS unit and encouraged to walk, swim, and cycle for exercise. AR336-37. A treating source described an April 2012 MRI as "quite unremarkable," AR 341, and although a later MRI scan revealed "mild central spinal stenosis," Goldassio's doctor told him he was "essentially normal," AR 680. Goldassio said he was still in pain, but his chiropractor wrote "[p]ossible SX [symptom] magnification." AR 328. Similarly, a doctor reported, "[P]atient has large symptom amplifications, states that he is not better and wants refill on [hyrdocodone]. Objective complaints not consistent with objective findings. It is noted that the patient has secondary gains." AR 336.

Goldassio eventually fell into depression. He started complaining of "visual illusions" (as opposed to hallucinations), which Goldassio guessed were caused by a prescription muscle relaxer. AR 417-18. In June 2013, Faith Tobias, PhD, a consultative examiner, conducted a mental status exam. AR 417-20. Among other things, her report says, "Registration: 3/3 words registered on the first trial. Short-Delay Recall: 3/3 words recalled. Attention/Concentration: The claimant was able to correctly complete serial sevens." AR 418. Based on those and other tests, Dr. Tobias assigned Goldassio a Global Assessment of Functioning ("GAF") score of 65 (indicating mild symptoms) and concluded that his cognitive and emotional problems caused at most mild impairment of his ability to work. AR 420. State agency psychologists who later reviewed Goldassio's disability application reached similar conclusions. Randall Garland, PhD, noted that Goldassio had exhibited a "slightly restricted affect" at times, but Dr. Garland concluded that the record did not "establish the presence of a medically determinable mental impairment. AR 47. A second state agency psychologist, Margaret Pollack, PhD, later agreed with Dr. Garland's assessment. AR 69-70.

The depression persisted, however, and Goldassio attended therapy through much of 2014. Randall Wright, Psy.D, noted that Goldassio reported continuing back pain – nine out of ten – "occasional visual hallucinations," and a "restricted" affect. AR 661. In February Wright

conducted tests of Goldassio's memory and cognitive abilities. "[Goldassio] was able to correctly calculate 5 simple subtraction problems (serial 7s). His delayed memory was moderately impaired as he was only able to recall 1 word after an interference task. . . . [T]he patient endorsed a moderate-to-severe form of depression." AR 657. Dr. Wright concluded that Goldassio was "[f]rom a cognitive standpoint, grossly intact, with mild impairment in attention and delayed recall." AR 658.

In August 2014, Goldassio began therapy with a Halo Saleem, MD, a psychiatrist. AR 719-20. Over the course of five sessions conducted between August and November, Goldassio reported auditory and visual hallucinations and mild-to-severe anxiety. AR 714-20. Dr. Saleem noted that Goldassio exhibited poor memory and attention/concentration. *Id.* He assigned Goldassio a GAF score of 60, indicating moderate symptoms. AR 718. In November Dr. Saleem prepared a check-the-box questionnaire, which said that Goldassio suffered "markedly limited" functioning in areas such as "ability to maintain attention for extended periods," "ability to complete a normal workday and work-week without interruptions from psychologically based symptoms," and "ability to get along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes." AR 498-99. Dr. Saleem concluded that Goldassio's problems, which stemmed from his "severe depression," would prevent him from carrying on a job. *Id.*

### B. Social Security Administrative Proceedings

Goldassio applied for benefits under Titles II and XVI in 2013, alleging that he was disabled as of September 26, 2011. AR 11, 164-175. After the Commissioner denied Goldassio's application initially and on reconsideration, Goldassio requested a hearing before an administrative law judge ("ALJ"). ALJ Nancy Lisewski presided over a hearing in Oakland in 2015.

Two witnesses testified at the hearing. First up was Goldassio, who described his work and educational history, explained that he drove himself to the hearing, and alleged that he could not stand, walk, or sit for even short periods without a break. AR 32-36. Goldassio said he does not do yard work or clean dishes, but he helps wash his laundry and goes grocery shopping with

3

1  the assistance of family members. AR 37-38. Next a vocational expert offered testimony about
2  Goldassio's prior work experience. The expert explained that a hypothetical person of Goldassio's
3  age, education, and work background could perform Goldassio's earlier jobs despite being limited
4  to "medium" work. AR 40-41.

The ALJ issued a written decision in August 2015. After concluding that Goldassio met the insured status requirements for Title II benefits, the ALJ considered the disability claim with the five-step, sequential evaluation approach required by the Commissioner's regulations. At step one, the ALJ found that Goldassio had not performed substantial gainful activity since the alleged onset date of his disability. AR 13. At step two, the ALJ found that Goldassio had only one severe impairment, lumbosacral strain, and that his depression was not severe. AR 13-15. At step three, the ALJ determined that none of Goldassio's impairments or combinations thereof met or were medically equivalent to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Goldassio had a residual functional capacity ("RFC") to perform "the full range of medium work as defined in 20 CFR 4041567.1567(c) and 416.967(c)." AR 16. In determining the RFC, the ALJ concluded that Goldassio's statements concerning his symptoms were not entirely credible. AR 19-20. The ALJ gave significant weight to the opinions of Drs. Toibias, Garland, and Pollack, and little weight to the opinion of Dr. Saleem. AR 20-21. Dr. Saleem's opinion was "based primarily on the claimant's subjective reporting of symptoms, [did] not appear to be supported by any objective testing, was drafted after a relatively short treatment relationship, and [was] not supported by the weight of the evidence." AR 21.

The Appeals Council later denied Goldassio's request for review of the ALJ's decision, so Goldassio filed a civil action in this Court.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision to deny benefits but must affirm if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g) ("findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"); *Molina v. Astrue*, 674 F.3d 1104, 1110

4

(9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and is "more than a mere scintilla, but may be less than a preponderance." *Molina*, 674 F.3d. at 1110-11 (citations omitted). A court must consider the record as a whole when assessing whether the Commissioner's decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience. *Id.* § 423(d)(2)(A).

In determining whether a claimant has a disability, an ALJ follows a five-step analysis:

1. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).[1] If so, the claimant is not disabled. If not, the analysis proceeds to step two.

2. At step two, the ALJ must assess whether the claimant suffers from a severe "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled. If so, the evaluation proceeds to step three.

3. At step three, the ALJ determines whether the claimant's impairments or combination of

---

[1] All citations to the Code of Federal Regulations refer to the regulations for the Title II (Disability Insurance Benefits) program. The regulations for the Title XVI (Supplemental Security Income) program, which can be found at 20 C.F.R. §§ 416.900-416.999, are virtually identical.

impairments meets or medically equals the requirements of the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four.

4. At step four, the ALJ determines whether the claimant has the RFC to perform past work despite his or her limitations. *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform past work, then he or she is not disabled. If not, then the evaluation proceeds to step five.

5. At the fifth and final step, the ALJ must determine whether the claimant can perform other substantial gainful work available in the economy, considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four; the Commissioner has the burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

## IV. DISCUSSION

### A. The ALJ did not err in discounting the opinion of Dr. Saleem

When a treating physician's opinion is well-supported and not inconsistent with other substantial evidence in the record, a treating physician's opinion is entitled to controlling weight. *Edlund*, 253 F.3d at 1157; 20 C.F.R. § 404.1527(c)(2). Even if the treating doctor's opinion is contradicted by other evidence, an ALJ may discount that opinion only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Edlund*, 253 F.3d at 1157. For example, an ALJ may discount a medical opinion if it is based primarily on a claimant's subjective complaints, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if the opinion is inconsistent with the record as a whole, 20 C.F.R. § 404.1527(c)(2)(4).

Dr. Saleem's opinion was more pessimistic than the opinions of Goldassio's other treatment sources. Dr. Tobias, the consultative examiner, thought Goldassio suffered from at most mild impairment of his ability to work, AR 420, and the two non-examining state agency physicians did not even believe there was evidence of a medically determinable mental impairment at all, AR 47, 69-70. Although Dr. Saleem was Goldassio's treating physician – and his opinion was therefore presumptively entitled to deference – other evidence in the record

plainly contradicted his opinion about Goldassio. So the relevant question on appeal is whether the ALJ provided specific and legitimate reasons supported by substantial evidence to discount that opinion.

Goldassio says no, objecting especially to the ALJ's argument that Dr. Saleem based his opinion on Goldassio's subjective reporting of symptoms. Dkt. No. 8 at 6-8. He also says Dr. Saleem naturally had few objective ways to reach his conclusions: "The ALJ never specified what other objective testing is available in the mental health realm that Dr. Saleem could have performed. . . . [T]he patient interview and mental status exam[] remain[s] the foundation for" evaluating a claimant's mental impairments. Dkt. No. 18 at 8. Goldassio's point about objective testing in the mental health context is fair, at least in the sense that emotional issues are less tangible and quantifiable than physical ailments. If Goldassio's argument is that the ALJ mischaracterized the record, however, the Court disagrees.

The ALJ accurately summarized Dr. Saleem's November 2014 check-the-box form and the underlying treatment notes:

> "Dr. Saleem's notes from that day [the day he prepared the check-the-box form] indicate that the claimant had applied for disability and that 'he saw an orthopedic surgeon who said his back is fine' and reported visual hallucinations. Dr. Saleem opined that the claimant had marked impairment in his abilities to maintain attention for extended periods, maintain regular attendance and be punctual, make simple work-related decisions, and complete a normal workday without interruptions from psychologically-based symptoms."

AR 14 (internal citations omitted). As that excerpt suggests, Dr. Saleem's records were heavy on conclusions but light on explanations.[2] By contrast, Drs. Wright and Tobias detailed Goldassio's actual performance on various memory and concentration tests, and only then offered their opinions about Goldassio's ability to work. AR 418, 657-58.

Goldassio is correct that an ALJ may not dismiss a treating source's opinion simply because it is memorialized in a check-the-box form. *See Trevizo v. Berryhill*, 871 F.3d 664, 677

---

[2] In fairness, Dr. Saleem prepared what look like more detailed notes but they are, for the most part, illegible. AR 719-20. The portions that are decipherable suggest that the notes focus on Goldassio's subjective complaints and medical history.

7

n.4 (9th Cir. 2017) ("[T]here is no authority that a "check-the-box" form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments."). An AJL can, however, reject any medical opinion that lacks sufficient support in the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may "permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.") (citation omitted); 20 C.F.R. § 404.1527 ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). That is what happened here. The ALJ accorded more weight to the doctors, like Tobias and Wright, who offered detailed explanations for their conclusions, and less to the opinion of Dr. Saleem, who did not. Finally, it is up to the ALJ to resolve conflicts in the evidence, and this Court must affirm so long as the ALJ's conclusion was supported by substantial evidence. *See Edlund*, 253 F.3d at 1156 (9th Cir. 2001). Even though Dr. Saleem's notes and opinions suggested Goldassio might be disabled, the weight of the other evidence pointed in the opposite direction. The Court sees no error in the ALJ's conclusion.

Additionally, Goldassio objects to the ALJ's characterization of his relationship with Dr. Saleem as short. Citing *Le v. Astrue*, 529 F.3d 1200 (9th Cir. 2008), and *Ghokassian v. Shalala*, 41 F.3d 1300 (9th Cir. 1994), Goldassio argues that the four-month, five-visit relationship preceding the November 2014 check-the-box form was "more than enough to establish a treatment relationship" between doctor and patient. Dkt. No. 18 at 9. Goldassio's argument misses the point. The ALJ never argued that Dr. Saleem had not established a treatment relationship with Goldassio. Instead the ALJ said that although Dr. Saleem was a treating physician, his opinion was entitled to less weight because his treatment relationship with Goldassio was relatively brief. The ALJ was on firm legal footing. Under the regulations, if a treating source's medical opinion is not entitled to controlling weight, an ALJ must consider various factors when evaluating that treating source's opinion, and one of the enumerated factors is the length of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). Dr. Saleem's opinion was not entitled to controlling weight, so it was appropriate for the ALJ to consider the length of the treatment relationship. The Court sees no error here.

Finally, Goldassio says, "The Commissioner may argue that the ALJ gave greater weight to the other opinions in the file and thus that is substantial evidence to support the rejection of Dr. Saleem's opinion. Not so. The ALJ never rejected Dr. Saleem's opinion because of another doctor's opinion." Dkt. No. 18 at 9-10. This argument is without merit, as the ALJ expressly chose to credit the opinions of Drs. Garland, and Pollack (and to credit the observations of Dr. Tobias), at the expense of Dr. Saleem. AR 20-21.

### B. Substantial evidence supported the ALJ's s conclusion that Goldassio's depression was not severe

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Id.* (citing SSR 85-28). Here, the same evidence that cut against Dr. Saleem's opinion supports the ALJ's step-two finding of non-severity. Drs. Wright and Tobias both reported that although Goldassio's performance on cognitive and memory tests was less than perfect, it indicated no more than mild impairment. AR 420, 657-58. The ALJ also justifiably discounted Goldassio's own account of his symptoms, about which two treating sources had already expressed skepticism. AR 328, 336. The Court sees no error here.

## V. CONCLUSION

For the reasons explained above, the Court denies Goldassio's summary judgment motion and grants the Commissioner's cross-motion. Judgment will be entered for the Commissioner.

**IT IS SO ORDERED.**

Dated: May 14, 2018

HOWARD R. LLOYD
United States Magistrate Judge